(No. 69918.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSE HUANTE, Appellee.

*Opinion filed April 18, 1991.*

BILANDIC, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago

(Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb and Stanislaus Gonsalves, Assistant State's Attorneys, of counsel), for the People.

Stephen M. Connolly, of Chicago, for appellee.

Javier H. Rubinstein, of Mayer, Brown & Platt, of Chicago (Roslyn C. Lieb and Susan R. Gzesh, of counsel), for *amici curiae* Chicago Lawyers' Committee for Civil Rights under Law, Inc., *et al.*

CHIEF JUSTICE MILLER delivered the opinion of the court:

Defendant, Jose Huante, pleaded guilty to felony drug charges in the circuit court of Cook County. As a result of the convictions arising from his guilty plea, defendant, a United States resident with legal alien status, is now subject to deportation pursuant to Federal statute. Defendant filed a post-conviction petition seeking to have his guilty plea set aside on grounds that he received ineffective assistance of counsel. In his petition, defendant alleged that his plea was involuntary because his attorney failed to advise him that he would be deported as a result of his convictions. The trial court denied the petition, finding no affirmative misrepresentation of law regarding the deportation consequences. The appellate court, with one justice dissenting, reversed the circuit court's order and remanded the cause with directions to vacate defendant's guilty plea. (194 Ill. App. 3d 159.) We allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)) and now reverse the judgment of the appellate court and affirm the judgment of the circuit court.

Defendant was born in Mexico and had resided in the United States as a lawful alien for 13 years at the time of his arrest. He is deemed an "alien" because he is not a citizen of this country. (8 U.S.C. §1101(a)(3) (1982).) Defendant was arrested on November 13, 1985, after he

made three separate sales of cocaine to an undercover Chicago police officer. The total street value of the narcotics delivered by defendant was $6,450, making him eligible for sentencing as a Class X felon. See Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2).

It appears from the evidence that during discussions between defendant and his attorney regarding plea negotiations and the consequences of pleading guilty, the attorney did not ask defendant about his citizenship, defendant did not disclose to the attorney his alien status, and the attorney was not otherwise aware of that status. The attorney did not at any time advise defendant that he would be subject to deportation as a result of his convictions.

Pursuant to a plea agreement, the State reduced one of the charges to a lesser charge, and defendant pleaded guilty to three counts of delivery of a controlled substance. Defendant was subsequently sentenced to a concurrent three-year term of imprisonment on each of the three counts. At the time the plea was taken, the trial judge advised defendant of the plea consequences in accordance with the requirements of Supreme Court Rule 402 (107 Ill. 2d R. 402). Defendant did not thereafter appeal his convictions or file a motion to withdraw his guilty plea. Following his release from prison, defendant learned that the United States Immigration and Naturalization Service had lodged a detainer against him. Defendant is subject to deportation as a convicted felon pursuant to 8 U.S.C. §1251(a)(11) (1982). There is no dispute here that defendant's convictions require his deportation under that provision.

Defendant began the present action on May 26, 1988, by filing in the circuit court of Cook County a petition pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122-1 et seq.). In the petition, defendant asked to have his guilty plea set aside, alleging

that because he had been denied the effective assistance of counsel, the plea was involuntary. Specifically, defendant claimed that he would not have pleaded guilty had his attorney first determined his alien status and advised him that he would be subject to deportation as a result of his convictions.

The trial court granted defendant an evidentiary hearing on the post-conviction petition. At the hearing, the presentence report prepared in the original case was admitted as evidence indicating that defendant was born in Mexico, had resided in the United States for 13 years, was employed as a general contractor, and was married and had two children. Defendant's trial attorney testified that at the time he advised defendant to plead guilty, he was aware that a drug conviction could result in deportation under Federal law. The attorney explained that he did not broach the subject of deportation with defendant at any time because he did not know that defendant was an alien or might have any immigration problems.

Defendant also testified at the hearing. He stated that at the time of his arrest he had a "green card," which authorized him to reside legally in the United States. Defendant testified that before pleading guilty, he was not advised by counsel that he would be deported as a result of the convictions arising from the plea. Defendant stated that he would not have entered the guilty plea had he known that he would face deportation as a consequence of the convictions.

The trial judge denied defendant's post-conviction petition. The judge distinguished the present case from *People v. Correa* (1985), 108 Ill. 2d 541, in which counsel was found to be ineffective for giving erroneous advice in response to the defendant's specific questions about deportation, and *People v. Padilla* (1986), 151 Ill. App. 3d 297, in which counsel was found to be ineffective because he knew that the defendant was an alien but failed to advise

him of deportation consequences. The trial judge concluded that the attorney's representation of defendant was not ineffective because the attorney was unaware of defendant's alien status and did not affirmatively misrepresent the law.

Defendant appealed. With one justice dissenting, the appellate court reversed. (194 Ill. App. 3d 159.) The appellate court found that defendant's attorney knew or should have known that defendant was an alien, and the court found that the attorney's failure to advise defendant of the possible deportation consequences of his convictions constituted ineffective assistance of counsel. (194 Ill. App. 3d at 162-63.) The dissenting justice believed that, because the attorney was unaware of defendant's alien status, the attorney's conduct was not deficient. (194 Ill. App. 3d at 167 (DiVito, J., dissenting).) We allowed the State's petition for leave to appeal from the appellate court judgment. (107 Ill. 2d R. 315(a).) A joint brief in support of the appellate court's decision has been filed by *amici curiae*, the Chicago Lawyers' Committee for Civil Rights Under Law, Inc., the Mexican American Legal Defense and Education Fund, and Travelers & Immigrants Aid of Chicago. See 107 Ill. 2d R. 345.

Our analysis for determining whether defendant has been denied the effective assistance of counsel begins with the standard set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. (See *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27 (adopting standard).) Although *Strickland* dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, the test announced in that case is applicable as well to challenges to guilty pleas alleging the ineffective assistance of counsel. (*Hill v. Lockhart* (1985), 474 U.S. 52, 57, 88 L. Ed. 2d 203, 209, 106 S. Ct. 366, 369-70.) To show that he was deprived of the effective assistance of counsel,

defendant must establish both that his attorney's performance was deficient, and that defendant suffered prejudice as a result. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

We applied the *Strickland* standard in *People v. Correa* (1985), 108 Ill. 2d 541, which also involved an allegation of ineffective assistance of counsel in an attorney's representation of a defendant in entering a guilty plea. In *Correa*, the defendant's attorney, in response to his client's questions, incorrectly stated that the defendant would not be deported as a result of his convictions in that case. Noting that the defendant had specifically sought his attorney's advice on the potential immigration consequences of a conviction, this court found that the defendant had been denied the effective assistance of counsel. The court also noted that the case was "not one in which counsel simply failed to advise the defendant of the collateral consequence of deportation" (*Correa*, 108 Ill. 2d at 550). The court expressly declined to consider the question raised here, whether "the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea" constituted ineffective assistance of counsel (*Correa*, 108 Ill. 2d at 551). In the present case, it is undisputed that the defendant and his attorney did not discuss the defendant's status as a legal alien, and that the attorney did not provide any misleading or incorrect advice with respect to the immigration consequences of a criminal conviction.

Our first inquiry under *Strickland* is whether counsel's performance was deficient, that is, whether it "fell below an objective standard of reasonableness." (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In cases involving guilty pleas, the standard for reasonableness "depends *** not on whether a court would retrospectively consider counsel's advice to be right or wrong, but whether that advice was within the range of compe-

tence demanded of attorneys in criminal cases." *McMann v. Richardson* (1970), 397 U.S. 759, 770-71, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1448-49; see also *Correa*, 108 Ill. 2d at 549.

The foundations of a valid guilty plea are the defendant's voluntary admission in open court that he committed the acts with which he is charged and his knowing consent that judgment may be entered without trial. (*Brady v. United States* (1970), 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1469.) Because the defendant stands as a witness against himself in the plea setting and is thus protected by the fifth amendment, his admission cannot be compelled but must be a voluntary expression of his own choice. And because a defendant's consent to judgment without trial constitutes a waiver of the constitutional rights attending trial, his consent must be made with knowledge of the waiver of those rights. *Brady*, 397 U.S. at 748, 25 L. Ed. 2d at 756, 90 S. Ct. at 1469.

Because the validity of a defendant's guilty plea turns on whether he entered the plea voluntarily and intelligently (*Hill*, 474 U.S. at 56, 88 L. Ed. 2d at 208, 106 S. Ct. at 369; *Brady*, 397 U.S. at 748, 25 L. Ed. 2d at 756, 90 S. Ct. at 1469), counsel's conduct is deficient under *Strickland* if the attorney failed to ensure that the defendant entered the plea voluntarily and intelligently (*Santos v. Kolb* (7th Cir. 1989), 880 F.2d 941, 944; see also *Lee v. Hopper* (5th Cir. 1974), 499 F.2d 456, 462).

In measuring the reasonableness of an attorney's performance under the *Strickland* test, courts have emphasized the distinction between advising a defendant of the direct consequences of a guilty plea and of consequences such as deportation that arise collaterally from the plea. Because knowledge of the latter is not necessary for the entry of a knowing and voluntary plea, courts generally have declined under *Strickland* to find that an attorney

who failed to advise a defendant of the deportation consequences of a guilty plea provided ineffective assistance of counsel. (See, *e.g., United States v. Del Rosario* (D.C. Cir. 1990), 902 F.2d 55; *United States v. Yearwood* (4th Cir. 1988), 863 F.2d 6; *Commonwealth v. Frometa* (1989), 520 Pa. 552, 555 A.2d 92; *Mott v. State* (Iowa 1987), 407 N.W.2d 581.) As one court has explained:

> "If the consequence flowing from the plea is 'collateral,' then the defendant need not be informed of it before entering the plea. Since the doctrine provides a test for determining the voluntary and intelligent character of the plea, it is applied both to the trial court—as a measure of its performance in establishing the voluntary and intelligent character of the plea before accepting it—and to defense counsel—as a measure of his performance in providing a defendant with the information necessary to render the plea voluntary and intelligent." *Santos*, 880 F.2d at 944.

To ensure that a defendant enters his guilty plea knowingly and voluntarily, and thereby to safeguard the integrity of the plea process, this court adopted Supreme Court Rule 402. Entry of a valid guilty plea in compliance with Rule 402 requires that the trial judge determine that the plea is knowing and voluntary. To ensure that the defendant enters his guilty plea knowingly, the judge must advise the defendant of the nature of the charges and the minimum and maximum sentences prescribed by law. The judge must also inform the defendant of the waiver of trial rights. (107 Ill. 2d R. 402(a).) To ensure that the defendant enters his guilty plea voluntarily, the judge must determine in open court that the plea was not obtained by coercion, threats, or promises apart from a plea agreement. (107 Ill. 2d R. 402(b); *People v. Stewart* (1984), 101 Ill. 2d 470, 484.) Rule 402 does not require, however, that a defendant be advised of the collateral consequences of his plea. In that respect Rule 402 reflects

our decisional law prior to the rule's adoption. (See *People v. Thomas* (1968), 41 Ill. 2d 122, 125.) Similarly, this court has observed that "Rule 402 was designed to insure properly entered pleas of guilty, not to provide for a recital of all the possible sentencing situations that might arise." *Stewart*, 101 Ill. 2d at 486.

Decisions interpreting the Federal counterpart to our Rule 402, Rule 11 of the Federal Rules of Criminal Procedure (Fed. R. Crim. Proc. 11), have also held that the validity of a guilty plea is not affected by the failure of the court or counsel to inform a defendant of the myriad consequences that are collateral to a felony conviction. Other collateral consequences that might be as serious to another defendant as deportation may be to this defendant, but that need not be discussed by counsel prior to the entry of a valid guilty plea, include loss of the right to vote (*United States v. Cariola* (3d Cir. 1963), 323 F.2d 180), loss of civil service employment (*United States v. Crowley* (3d Cir. 1976), 529 F.2d 1066), loss of the right to a driver's license (*Moore v. Hinton* (5th Cir. 1975), 513 F.2d 781) and loss of the right to travel freely abroad (*Meaton v. United States* (5th Cir. 1964), 328 F.2d 379).

As we have stated, courts of review have generally agreed that a defendant's awareness of collateral consequences, including deportation, is not a prerequisite to the entry of a knowing and voluntary plea of guilty. We see no grounds for departing from that sound reasoning, which reflects the proper concerns for the sixth amendment guarantee of effective assistance of counsel, for the practical administration of criminal justice, and for the integrity of the plea process. Applying *Strickland* to the facts of this case, we conclude that the conduct of defendant's attorney in failing to volunteer to his client advice concerning the deportation consequences of a criminal conviction did not "[fall] below an objective standard of

reasonableness." *Strickland,* 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Our conclusion that counsel's performance was not deficient is, of course, dispositive of defendant's claim that his plea should be vacated because he was denied the effective assistance of counsel. (See *Strickland,* 466 U.S. at 687, 700, 80 L. Ed. 2d at 693, 702, 104 S. Ct. at 2064, 2071.) Assuming, however, that the attorney's performance was professionally unreasonable, defendant must also establish a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

In the present case, the appellate court concluded that defendant had satisfied the prejudice prong of the *Strickland* analysis because "there could be no doubt that the attorney's conduct affected the outcome of the plea process." (194 Ill. App. 3d at 166.) Elsewhere in its discussion, the court referred to the possibility that, under Federal law (see 8 U.S.C. §1251(b) (1982)), deportation may be avoided if the trial judge makes a recommendation to that effect. (194 Ill. App. 3d at 164.) We note, however, that aliens who are subject to deportation for narcotics offenses, as is the defendant here, are expressly excluded from the relief available under the cited provision. Accordingly, defendant cannot be heard to argue that he was prejudiced by his attorney's failure to attempt to negotiate a judicial recommendation against deportation. See *United States v. George* (7th Cir. 1989), 869 F.2d 333, 337 (no prejudice where judicial recommendation against deportation not available); *Janvier v. United States* (2d Cir. 1986), 793 F.2d 449, 456 (Bartels, J., concurring) (no *per se* ineffective assistance of counsel arising from the attorney's failure to suggest a judicial recommendation against deportation even when such relief from deportation was in fact available); see also Comment, *Collateral Conse-*

*quences of Guilty Pleas in the Federal Criminal Justice System*, 16 Harv. C.R.-C.L. L. Rev. 157, 171-75 (1981).

Defendant alleges that, "but for" his attorney's failure to advise him of the deportation consequences of pleading guilty, he would not have entered the plea but would have gone to trial instead. The mere allegation of prejudice is not enough, however (see *United States v. Campbell* (11th Cir. 1985), 778 F.2d 764, 768), and we do not believe that defendant in the present case has made the necessary showing under *Strickland*.

It should be noted that the same threat of deportation existed whether defendant was convicted upon a guilty plea or following a trial. Defendant raised no possible defense to the charges at the post-conviction proceeding and has said nothing to repudiate his admission of guilt. As we have indicated, defendant was originally charged with a Class X felony. As part of the plea agreement between defense counsel and the prosecution, the charges were later reduced, and defendant received a correspondingly less severe sentence of imprisonment. These circumstances suggest that defendant would have had reason to continue with his plea even if he had been aware of the deportation consequences of a conviction. Moreover, defendant has failed to show that the decision to go to trial would have carried with it anything more than a remote chance of gaining an acquittal. The State's evidence against defendant was strong; the chief prosecution witness was the undercover police officer to whom defendant sold the contraband. The record does not demonstrate a "reasonable probability" that advising defendant of the deportation consequences of a conviction would have led him to reject the terms of the plea agreement.

In sum, defendant has failed to establish either requirement of the *Strickland* test. Defendant has shown neither that his attorney's performance caused him to plead guilty unknowingly or involuntarily, nor that he

would have insisted on proceeding to trial had he been aware of the collateral consequences of his convictions. No less is required to warrant vacating defendant's guilty plea on a claim of ineffective assistance of counsel. We now disapprove of *People v. Maranovic* (1990), 201 Ill. App. 3d 492, *People v. Miranda* (1989), 184 Ill. App. 3d 718, and *People v. Padilla* (1986), 151 Ill. App. 3d 297, to the extent that those decisions are inconsistent with our present opinion.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.