John D. JACKSON

v.

**UNITED STATES of America.**

**Criminal No. 97–0246.**
**Civil No. 03–2502.**

United States District Court,
D. Maryland.

Dec. 27, 2006.

Christine Manuelian, Office of the United States Attorney, Baltimore, MD, Lynne A. Battaglia, Maryland Court of Appeals, Annapolis, MD, for United States of America.

## MEMORANDUM

LEGG, Chief Judge.

Now pending is *pro se* petitioner John D. Jackson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Because the papers adequately present the issues, no evidentiary hearing is necessary.[1] For the reasons that follow, the Court will, by separate Order, DENY Jackson's motion and DIRECT the Clerk to CLOSE the case.

## I. BACKGROUND

On June 27, 1997, a federal grand jury handed down a five count indictment against Jackson and three other named individuals (Eric Batson, James Kane, and Leroy Yuman). Count I charged the men with conspiring to distribute cocaine and cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and 846. Jackson was not named in Counts II–V, which charged individual acts of distribution.

On October 2, 1998, Jackson terminated his court-appointed counsel and retained Kenneth W. Ravenell, Esquire, an experienced Baltimore criminal defense lawyer.[2] Ravenell conducted a vigorous defense on Jackson's behalf, requesting a continuance to investigate the case, filing several pretrial motions, and opposing the government's motions.[3]

---

1. *See United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988) (recognizing that "[a] hearing is not required .... on a § 2255 motion if the record conclusively shows that petitioner is entitled to no relief").

2. Ravenell was retained, not court-appointed.

3. Among other motions, Ravenell filed a Motion for Bill of Particulars, a Motion to Suppress Evidence, and a Motion for a *Kastigar* hearing. He also adopted the motions filed by counsel representing the other defendants.

Meanwhile, Jackson's co-conspirators negotiated guilty pleas. Kane and Batson signed plea agreements in October and November 1998, and Leroy Yuman pleaded guilty on May 8, 1999.[4] From June 1999 to March 2000, Jackson and the government explored a plea bargain. When discussions failed, trial was scheduled for July 31, 2000.[5]

As was customary in the District of Maryland and elsewhere, the original indictment did not allege a drug quantity. On June 26, 2000, the Supreme Court handed down its decision in *Apprendi v. New Jersey.* On July 20, 2000, the government obtained a superseding indictment that specified the drug quantity (more than five kilograms of cocaine and fifty grams of crack) attributable to the conspiracy charged in Count I. Other than this addition, and the deletion of the names of the co-conspirators who had pleaded guilty, the superseding indictment was identical to the conspiracy count in the original indictment.[6]

On July 24 Ravenell moved for a continuance, arguing that the government had "broadened" its prosecution of Jackson. On July 25, the Court heard argument. The government represented that it had not modified its case, but had merely alleged a drug quantity that was no surprise to Jackson.[7] The Court denied Ravenell's motion, finding that the superseding indictment did not raise any additional factual or legal issues, and that Jackson would not be prejudiced by proceeding to trial as scheduled.

Jackson's trial began on July 30 and lasted eleven days. The evidence proved that Jackson had been heavily involved in distributing drugs on Maryland's Eastern Shore.[8] Several of Jackson's former co-conspirators, who were cooperating with the government, testified that Jackson cultivated New York City drug sources from whom he, or others in his employ, purchased cocaine.[9] Jackson repackaged the cocaine, often converting it into crack, and then distributed it. Testimony also established that Jackson facilitated the drug-dealing of his co-conspirators by brokering multi-ounce and kilogram transactions for them.[10]

On August 10, 2000, the jury returned a verdict of guilty, specially finding that the Jackson conspiracy had possessed with the intent to distribute more than five kilograms of cocaine and fifty grams of crack. The Court thereafter sentenced Jackson to 188 months.

---

**4.** Kane signed his plea agreement on October 15, 1998, and Batson signed his on November 23, 1998.

**5.** The plea negotiations are germane insofar as they establish a basis for Jackson's knowledge of the drug quantities that the government was seeking to attribute to him.

**6.** Both the original and superseding indictment charged Jackson under 21 U.S.C. §§ 841(a)(1) and 846.

**7.** Jackson was advised at his initial appearance and at his arraignment that he faced the maximum penalty of life imprisonment and a minimum mandatory sentence of ten years because of the amount of cocaine and crack allegedly distributed by the conspiracy.

**8.** Law enforcement officers testified that Jackson was twice arrested on the Eastern Shore for possession with the intent to distribute cocaine. Moreover, on both occasions, Jackson was found in possession of tools of the drug trade, including a sifter, digital scales, and large, unexplained amounts of cash.

**9.** The co-conspirator testimony was corroborated by phone records and speeding tickets issued to co-conspirators driving between New York and Maryland.

**10.** Some co-conspirators also began to deal directly with Jackson's sources.

On October 5, 2001, Jackson appealed his conviction to the Fourth Circuit, which affirmed on February 8, 2002.[11] *See United States v. Jackson,* 28 Fed.Appx. 291, 292 (4th Cir.2002) (unpublished). The Supreme Court denied Jackson's petition for a writ of certiorari on October 7, 2002.

On August 28, 2003, Jackson filed the instant § 2255 motion. In it, Jackson raises the following ineffective assistance of counsel claims:

(1) Counsel failed to move to dismiss the superseding indictment;

(2) Counsel failed to argue forcefully for a continuance;

(3) Counsel failed to argue that the indictment was insufficiently informative;

(4) Counsel erred in moving the original indictment into evidence;

(5) Counsel failed to object to the admission of facts relating to his 1995 state arrest;

(6) Counsel failed to raise on appeal Jackson's arraignment at trial; and

(7) Counsel failed to raise a Speedy Trial claim on appeal.

Jackson also argues on due process grounds that the superseding indictment was tainted by improper evidence. The Court will address the taint argument first, followed by the ineffective assistance claims.

**11.** On appeal, Jackson filed a *pro se* supplemental brief. In it, he argued that the trial court abused its discretion in not granting a continuance, not arraigning him until the middle of trial, and allowing into evidence his 1995 conviction. He now raises those arguments as ineffective assistance claims.

**12.** This argument lies at the heart of Jackson's effort to vacate his sentence. On this ground Jackson has: (i) moved for immediate release or, in the alternative, an evidentiary hearing (Docket No. 190), (ii) moved to dismiss the indictment (Docket No. 191), and

## II. ANALYSIS

### A. Due Process

Jackson claims that he was denied due process because the grand jury indicted him on the basis of evidence proved inaccurate at trial.[12] Jackson contends that, but for the "false" or "perjured" testimony, he never would have been indicted.[13]

 Because Jackson did not appeal this issue to the Fourth Circuit, he is barred from raising it now. *Bousley v. United States,* 523 U.S. 614, 621–22, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Jackson contends, however, that the Court may review his claim because he is "actually innocent." *United States v. Harris,* 183 F.3d 313, 318 (4th Cir.1999) (citing *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Under the actual innocence doctrine, the Court may review Jackson's claim if he can produce "new evidence" showing that "it is more likely than not that no jury would convict him." *Id.* Jackson's "new" evidence consists of the grand jury transcripts that Ravenell used to cross-examine the government's witnesses. This evidence is not new, however. Nor does it establish Jackson's innocence. Ravenell brought the grand jury testimony to the petit jury's attention, and they convicted him regardless. Accordingly, Jackson's due process argument is procedurally barred. *Id.* at 317.

(iii) thrice moved for summary judgment (Dockets Nos. 184, 194 & 195). For the reasons stated in this memorandum, and by separate Order, the Court DENIES these motions as MOOT.

**13.** Jackson has not shown that Special Agent Rivello or any other witness committed perjury. Jackson bases his perjury charge on inconsistencies between the grand jury and trial testimony. Ravenell painstakingly explored these discrepancies during his cross examinations. The jury was nonetheless convinced of Jackson's guilt.

■ Even assuming that the Court could consider the claim, it is meritless. Except for special circumstances not present here, a conviction cannot be challenged by attacking the charging instrument. *United States v. Mechanik,* 475 U.S. 66, 73, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); *United States v. Higgs,* 353 F.3d 281, 304–07 (4th Cir.2003). The indictment represented the grand jury's finding that probable cause existed to charge Jackson with conspiracy. The petit jury found him guilty beyond a reasonable doubt, which "demonstrates *a fortiori*" that there was probable cause to charge him in the first place. *Mechanik,* 475 U.S. at 67, 106 S.Ct. 938.

## B. Ineffectiveness of Counsel:

### 1. *Strickland Standard:*

Ineffective assistance of counsel claims are evaluated under the *Strickland* two-prong test, which requires Jackson to show (i) that counsel's performance was deficient, and (ii) that counsel's deficient performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the first prong, Jackson must produce evidence that Ravenell's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id.* To satisfy the second prong, Jackson must show that but for his attorney's deficient performance, the result of the proceedings would have been different. *Id.* The Court may address either the prejudice or the effectiveness prong first. If Jackson cannot satisfy that prong, the Court's inquiry ends. *Id.* at 697, 104 S.Ct. 2052.

### 2. Claimed Errors:

### a. Counsel failed to move to dismiss the superseding indictment.

■ As discussed, Jackon asserts that the superseding indictment was invalid because it was based on false grand jury testimony. He faults Ravenell for failing to seek dismissal of the superseding indictment on this basis. Because the Court has rejected Jackson's due process argument on the merits, *see Mechanik,* 475 U.S. at 67, 106 S.Ct. 938, his ineffective assistance claim also fails. Moreover, a facially valid indictment, like the superseding indictment, cannot be challenged for evidentiary incompetence. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Accordingly, Ravenell was not ineffective for failing to move to dismiss it.

### b. Counsel failed to argue forcefully for a continuance.

■ According to Jackson, Ravenell missed good arguments for a continuance. He contends that Ravenell should have argued that the superseding indictment charged him with a new crime that carried a higher penalty. Jackson's claim has no merit. The superseding indictment did not charge him with a new crime; it merely added a drug quantity. Jackson cannot legitimately claim surprise. He was advised of the potential penalties, which were driven by drug type and quantity, at his initial appearance and at his arraignment on the original indictment. The statement of facts included in his coconspirators' plea agreements, which were provided to Jackson in discovery, stipulated that the conspiracy had distributed five to fifteen kilograms of cocaine and more than 1.5 kilograms of crack. Jackson himself explored a plea agreement with the government for a ten month period between June 1999 and March 2000. When a defendant faces a drug conspiracy indictment, plea discussions invariably center on the drug types and quantities that the government could prove against him at trial.

Jackson never makes concrete how a continuance would have benefited his defense. He does not claim that Ravenell was ill-prepared for trial. He merely contends that he and Ravenell would have had more time to "strategize." That contention is plainly insufficient under *Strickland. See* 466 U.S. at 687, 104 S.Ct. 2052; *see also United States v. Terry,* 366 F.3d 312, 316 (4th Cir.2004) (conclusory allegations of prejudice do not suffice).[14]

### c. Counsel failed to argue that the superseding indictment was insufficiently informative.

According to Jackson, Ravenell failed to seize on three flaws in the indictment: (i) that it did not identify the individuals with whom Jackson allegedly conspired, (ii) that it lacked "a statement of facts and circumstances," and (iii) that it alleged a conspiracy that was "too open-ended." Because these arguments are without merit, Ravenell was not deficient for failing to make them.

First, a number of circuits, including the Fourth (albeit in an unpublished opinion), have held that a conspiracy indictment under 21 U.S.C. § 846 need not name unindicted co-conspirators. *United States v. Mejia,* 448 F.3d 436, 445 (D.C.Cir.2006); *United States v. Black,* 1997 WL 787090, *1 (4th Cir.1997) (citing *United States v. Gaytan,* 74 F.3d 545, 552 (5th Cir.1996); *United States v. Brown,* 934 F.2d 886, 889 (7th Cir.1991); *United States v. Jenkins,* 779 F.2d 606, 608, n. 1 (11th Cir.1986)).

■ Second, an indictment need not contain a statement of facts to be valid.

An indictment need only "allege a conspiracy to distribute drugs, identif[y] the time period in which the conspiracy allegedly operated, and specif[y] the statute allegedly violated." *Black,* 1997 WL 787090 at *1. The indictment here satisfied all three requirements.

Third, the indictment was not open-ended because it charged a time period during which the conspiracy operated ("from on or about 1987 to on or about June 1997"). *See United States v. Williams,* 977 F.2d 575, at *4 (4th Cir.1992) (unpublished).

### d. Counsel erred in moving the original indictment into evidence.

■ At trial, Ravenell pursued a variance defense. He argued to the jury that the government's evidence, if believed, proved multiple conspiracies rather than the single conspiracy described in the superseding indictment. To support this argument, Ravenell introduced into evidence the original indictment, so the jurors could see whom the government had named as co-conspirators. He maintained that there was no evidence which tied together all five men into a confederation that met the requirements of a conspiracy. *See, e.g., United States v. Kennedy,* 32 F.3d 876, 882 (4th Cir.1994).

■ Jackson now contends that this strategy backfired, and that introducing the indictment into evidence poisoned the jurors' minds against him.[15] Jackson's claim must fail. So long as counsel's strategy was reasoned, it cannot be attacked under *Strickland,* where the Supreme

---

**14.** Jackson also faults Ravenell for failing to appeal this issue. Ravenell, however, cannot be faulted for failing to raise such a weak argument. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *see also United States v. Terry,* 366 F.3d 312, 318 (4th Cir.2004) (quoting *Epsom v. Hall,* 330 F.3d 49, 53 (1st Cir.2003) (observing that often a weak argument is not only useless but worse may detract from stronger arguments).

**15.** In his filings, Jackson seems to contend that the jury found him "guilty by association" because his name appeared in the original indictment alongside the names of others who had already pleaded guilty.

Court observed that counsel's "strategic choices made after thorough investigation of law and facts ... are virtually unchallengeable." 466 U.S. at 690–91, 104 S.Ct. 2052. Ravenell's strategy was reasonable. To secure a conviction, the government was required to prove beyond a reasonable doubt that Jackson was a member of the unitary conspiracy charged in the indictment. The Jackson conspiracy was a loose affiliation of individuals who interdependently bought and sold drugs from one another, rather than a tightly organized hierarchical drug ring. Ravenell's strategy reasonably focused on a weak point of the Government's case. The failure of the strategy to produce an acquittal does not mean that it was incompetent.

### e. Counsel failed to object to the admission of facts relating to his 1995 drug arrest.

Jackson argues that Ravenell was deficient for failing to exclude evidence of Jackson's 1995 drug arrest during which the police seized from him nine individually packaged bags of crack (totaling 26.4 grams), an electronic scale, a sifter, and $451.00 in cash.[16] Jackson argues that this evidence was improperly admitted to prove his "bad character," i.e., a propensity to commit drug crimes.

Jackson is simply incorrect. The conspiracy charged in the superseding indictment began in or about 1987 and ended in or about June 1997. Jackson's 1995 arrest established that he was in possession of drugs and the tools of drug distribution during the relevant time frame. The evi-

dence, therefore, was properly admitted as direct evidence of the charged conspiracy. *See, e.g., United States v. Green,* 175 F.3d 822, 831 (10th Cir.1999); *United States v. Concepcion,* 983 F.2d 369, 392 (2d Cir. 1992); *United States v. Chambers,* 1992 WL 296528, *1 (4th Cir.1992) (unpublished).[17]

### f. Counsel failed to raise on appeal Jackson's arraignment at trial.

Jackson contends that Ravenell should have appealed the fact that he was arraigned on the superseding indictment on day six of his eleven day trial. Such an appeal would have been fruitless. He received a copy of the superseding indictment before trial. Ravenell advised the Court that Jackson intended to plead not guilty. Jackson plead not guilty. He therefore cannot demonstrate prejudice under *Strickland.* 466 U.S. at 687, 104 S.Ct. 2052.

### g. Counsel failed to raise a Speedy Trial claim on appeal.

■ At two points in his filings, Jackson inserts the words "Speedy Trial Violation" into his claim that Ravenell should have appealed the denial of a continuance. Jackson never states how his rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* were violated. Instead, he only rehashes his argument, which the Court has determined to be unavailing, that Ravenell should have more forcefully sought a continuance in the wake of the superseding indictment.

---

**16.** The government only introduced evidence of the arrest and seizure. Although Jackson was charged and convicted in state court, this fact was not presented to the jury.

**17.** Additionally, Jackson criticizes Ravenell for not asking for a limiting instruction. He was never entitled to one. *See, e.g., United States v. Sasser,* 971 F.2d 470, 479 (10th Cir.

1992) (direct evidence of charged conspiracy does not require limiting instruction). Jackson also faults Ravenell for mentioning Jackson's 1995 arrest in his opening statement. The Court will not second-guess Ravenell's decision to "draw the sting" of the arrest in his opening. *McDougall v. Dixon,* 921 F.2d 518, 535–39 (4th Cir.1990).

647

## III. CONCLUSION

For the foregoing reasons, and by separate Order, the Court DENIES Jackson's motion and DIRECTS the Clerk to CLOSE the case.

### *ORDER*

Now pending is *pro se* Petitioner John D. Jackson's Motion to Vacate, Set Aside, or Correct Sentence. For the reasons stated in the memorandum of even date, the Court hereby:

(i) DENIES the Motion; and

(ii) DIRECTS the Clerk to CLOSE the case.

It is so ORDERED.